1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS D. CORBRAY,

           Petitioner,

    v.

SANDRA CARTER,

           Respondent.

Case No. C06-5043 RJB/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:
October 6, 2006**

       This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4.  Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. # 7).   Respondent has answered (Dkt. # 18), Petitioner has replied (Dkt. # 20), and Respondent has replied to Petitioner's response (Dkt. # 21).  This matter is now ripe for review.

## I.  BASIS FOR CUSTODY

       Petitioner is in custody pursuant to his 2002 second-degree assault (domestic violence) and first-degree rape (domestic violence) conviction.  (Dkt. # 19, Exh. 1).  The trial court sentenced Mr. Corbray, as a persistent offender, to life imprisonment without possibility of parole.   (Id. Exh. 1at 3).

REPORT AND RECOMMENDATION- 1

1

2

## II. STATEMENT OF THE CASE

3

A.   **Statement of Facts**

4

The Court of Appeals summarized the facts and the procedural posture of Petitioner's case as follows:

5

6

7
On the evening of January 6, 2001, Robin Donovan and Corbray planned to meet Corbray's friend, Aaron, and others at the 72nd Street Pub in Tacoma. Donovan stated that she arrived at the pub between 7 and 8 p.m. and left at "closing," which was around 1:30-2:00 A.M.

8

9

10
Donovan went to the bathroom and when she returned, found that her car keys and cellular telephone were no longer on the table and that her car was missing from the parking lot. Corbray was not in the bar, but Aaron remained. Aaron gave Donovan a ride to his house where she planned to call Corbray.

11

12

13
Donovan next saw Corbray when he drove up to Aaron's house in her car at the same time that she and Aaron were pulling up to the home. Corbray jumped out of the car and pulled Donovan out of Aaron's car, while Aaron watched. Corbray called her a "slut" and accused her of "f---ing his brother." Report of Proceedings (RP) at 36. Corbray hit her in the head, forced her into the car, and told her to drive to his sister's house.

14

15

16

17
Donovan drove while Corbray repeatedly hit her. When Donovan could no longer drive because of her injuries, Corbray drove the car.

18

19
At his sister's home, Corbray dragged Donovan out of the car and forced her into the house. Corbray pushed Donovan into the bathroom, forced her head toward the mirror, bent her over the vanity, and raped her, all the while calling her a slut and hitting her head. Corbray also hit Donovan's ankle and calf with some type of "electrical cord" while in the bathroom. 2 RP at 49. After raping her, Corbray threw Donovan into the bathtub.

20

21

22

23
One of Corbray's sisters, Tamara, walked into the bathroom while Donovan was in the bathtub and asked, "what the hell is going on?' 2 RP at 41. Corbray shut the door on his sister and continued hitting Donovan, when his sister told him "to get the hell out of her house." 2 RP at 41.

24

25

26
Both Corbray and Donovan left the bathroom. Corbray pushed Donovan down on the hallway floor and repeatedly kicked her on the head with his foot. Donovan recalls Corbray's mother, sister, and some children witnessing the events in

27

28
REPORT AND RECOMMENDATION- 2

the hallway. While Corbray was distracted Donovan grabbed her keys off the floor, got into her car, and drove away. Donovan drove to a convenience store and called 911.

An ambulance transported Donovan to the hospital where she remained for two days. Doctors diagnosed contusions on Donovan's scalp, eyelids, white of her left eye, entire jaw line, chin, face, cheek, elbow, upper arms, inside of her right upper arm, entire right forearm and wrist. She also sustained a swollen
right hand, right thigh, right knee (also an abrasion), right lower leg, left knee (also an abrasion), left shoulder, right breast, a perforated left eardrum, a chipped front tooth, and a bloody lip. A doctor placed splits on both of Donovan's arms, which she said she wore for two months. An internal examination revealed that Donovan had a right vaginal tear and bleeding in the vaginal vault.

The State charged Corbray with second degree assault and first degree rape. A jury found him guilty of both counts. After reviewing Corbray's criminal history, the trial court sentenced him to life in prison without early release under the Persistent Offender Accountability Act (POAA) former (RCW 9.94A.120(4)(2000).

(Dkt. 19, Exh. 4 at 1-3 (footnotes omitted)).

**B.**     **Procedural History**

    **1.**     **Direct Appeal**

Through counsel, Petitioner raised the following grounds for review:

    A.     There is insufficient evidence of assault in the second degree when there is no evidence of disfigurement, impairment of bodily function, or bone fracture.

    B.     There is insufficient evidence of rape in the first degree where there is no evidence of serious bodily injury.

    C.     The State violated Mr. Corbray's Sixth Amendment jury trial guarantee by allowing the judge, rather than the jury, to determine the fact of Mr. Corbray's prior convictions, resulting in a sentence that exceeded the penalty he would have received if he had been punished according to the facts in the jury verdict alone.

(Id., Exh. 2 at 4).

In a pro se brief, Petitioner raised the following additional grounds for review:

    A.     Trial counsel rendered ineffective assistance and violated Mr. Corbray's right to effective representation, by failing to exercise due diligence to retain a

REPORT AND RECOMMENDATION- 3

forensic expert to conduct analyzation [sic] of D.N.A evidence in a timely manner for trial.

B.    Trial counsel rendered ineffective assistance and violated Mr. Corbray's right to effective representation by failing to interview and Eye-witness and failing to subpoena witness and inform the court of the substance of their testimony.

(Id., Exh. 3 at 3).

The Washington Court of Appeals affirmed Petitioner's conviction and sentence.  (Id. at Exh. 4).  Petitioner filed a petition for discretionary review (Id., Exh. 5), in which he raised the following grounds for review:

A.    Does Mr. Corbray's claim that Wash. Const. Art. 1 §§ 21 & 22 provide the right to a jury determination of priors in a Persistent Offender proceeding, present a substantial issue of State constitutional law?

B.    Does the Sixth and Fourteenth Amendments of the United States Constitution require a jury determination of facts giving rise to persistent offender status?

(Id., Exh. 5 at 1).

On March 2, 2004, the Washington Supreme Court denied the petition.  (Id. at Exh. 6).

**2.    Personal Restraint Petition**

Petitioner filed a motion to vacate his sentence, which the Court of Appeals treated as a personal restraint petition (Id. at Exh. 7), raising the following grounds for review:

A(1).  Mr. Corbray was denied his constitutional rights under the Sixth and Fourteenth Amendment to effective assistance of counsel when his trial counsel directed Aaron Fox, a witness, not to tell the jury that it was Mike McCloud that Ms. Donovan left with along with Tim from the bar on the night of the alleged incident.

A(2).  Trial counsel had a duty to interview the witnesses for the defense, this is part of the requirement of the Sixth Amendment guarantee to a criminal defendants right to counsel.  Strickland, supra, Crandell v. Bunnell, 144 F.3d 1213 (9th Cir. 1998) .

REPORT AND RECOMMENDATION- 4

B(1).   Mr. Corbray contends his trial counsel did not provide effective assistance and he was prejudiced by his failure to impeach and to properly cross-examine Ms. Donovan with prior inconsistent statements.

B(2).   Defendant contends counsel was ineffective by not properly preparing for trial and that the complete interest of justice requires relitigation of this issue.

C(1).   Mr. Corbray contends his constitutional Sixth Amendment rights to confrontation was violated when he was denied the opportunity to cross-examine the doctor's medical report.

(Id., Exh. 7, at 7, 10, 16, 24, 30).

The Washington Court of Appeals dismissed the petition.  (Id. at Exh. 8).  Petitioner filed a petition for review, raising the following grounds:

A.   Does the interest of justice require the re-litigation of an issue in order to clearly establish actual innocence?

B.   Did counsels cumulative error violate Petitioners Sixth and Fourteenth Amendment Constitutional rights?

C.   Is the affidavit of Michael McLeod newly discovered evidence under Savaria, supra thus constituting a miscarriage of justice?

D.   Was the Petitioners right to Confrontation violated by Dr. Porter's testimonial hearsay?

(Id., Exh. 9 at iv).

The Washington Supreme Court denied review.  (Id., Exh. 10).


### III.  ISSUES PRESENTED

Petitioner's federal habeas petition presents this court with the following grounds for relief:

A.   Actual innocence/ineffective assistance of counsel; trial counsel's failure to conduct scientific examinations to completely exonerate Petitioner and implicate third party despite Petitioner's entreaties.

B.   Denial of effective assistance of counsel; failure of trial counsel to interview defense witnesses.

REPORT AND RECOMMENDATION- 5

C.   Denial of effective assistance of counsel; trial counsel's wrongful withholding of identity of an eyewitness and state court refusal to accept affidavit of Michael McLeod as newly discovered evidence.

D.   Denial of effective assistance of counsel; failure of trial counsel to impeach and properly cross-examine Donovan with prior inconsistent statements.

E.   Violation of Confrontation Clause; denial of opportunity to cross-examine Dr. Porter's medical report.

(Dkt. # 7, p. 7).

## IV.  EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id.

Where a Petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded.  Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  If the Petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows: (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

REPORT AND RECOMMENDATION- 6

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998). It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (quoting 28 U.S.C. § 2255).

Petitioner argues that he is entitled to an evidentiary hearing because he sought, but was denied a proper evidentiary hearing by the state court. In response, the State argues that his request for a state evidentiary hearing was untimely because it was made for the first time in his petition for discretionary review (per Washington RAP 16.11); that the affidavits are not credible and were fabricated after trial; and that even if the alleged facts are true, the state courts' rejection of Petitioner's claim on the merits amounted to a full and fair state evidentiary hearing. In support of its position, the State submits the affidavit of Petitioner's former counsel, Lloyde Alton. (Dkt. # 21, Exh. 2).

Where a state court has already made the relevant findings of fact, a district court evidentiary hearing would have no purpose if not to produce new evidence possibly contradicting those state court findings. Perez v. Rosario, 449 F.3d 954, 965 (9th Cir., 2006). On habeas review, state appellate court findings are entitled to the same presumption of correctness as trial courts' findings. Williams v. Rhoades, 354 F.3d 1101, 1008 (9th Cir. 2003).

There is no indication from the arguments presented by Petitioner "that an evidentiary hearing would in any way shed new light" on the grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177. As is discussed further below, the state courts' factual and credibility findings amounted to full and fair evidentiary hearings. The court finds that the issues

REPORT AND RECOMMENDATION- 7

raised by Petitioner may be resolved based solely on the state court record and no evidentiary

hearing is required.

# V. DISCUSSION

## A. Standard of Review

Federal courts may intervene in the state judicial process only to correct wrongs of a

constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  28 U.S.C. § 2254 is explicit in that

a federal court may entertain an application for writ of habeas corpus "only on the ground that [the

petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus

relief does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris,

465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented to the state courts.  28 U.S.C.

§2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the

applicant has the burden of rebutting the presumption of correctness by clear and convincing

evidence.  28 U.S.C. §2254(e)(1).

## B. Exhaustion of State Remedies

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly

presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v.

REPORT AND RECOMMENDATION- 8

Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).   The record reflects that Petitioner exhausted his

claims in the state court within the meaning of 28 U.S.C. § 2254(b).


**C.    Petitioner's Ineffective Assistance of Counsel Claims**

Petitioner claims his trial counsel, Lloyde Alton, was ineffective.  To support a claim of

ineffective assistance of counsel, a petitioner must satisfy a two-part standard.  First, the petitioner

must show that counsel's performance was so deficient that it "fell below an objective standard of

reasonableness."   Strickland v. Washington, 466 U.S. 668, 686 (1984).  This burden is highly

demanding, as the defendant must prove he was denied a fair trial by the gross incompetence of

counsel.  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).  Second, the petitioner must show

that the deficient performance prejudiced the defense so "as to deprive the defendant of a fair trial, a

trial whose result is reliable."  Strickland, 466 U.S. at 687.  Unless the defendant's showing satisfies

both parts of the analysis, "it cannot be said that the conviction . . . resulted from a breakdown in

the adversary process that renders the result unreliable."  Id.  Because the petitioner must satisfy

both prongs of the Strickland test, a court need not address both prongs if the petitioner makes an

insufficient showing of one prong.  Id. at 697.  Judicial review of an attorney's performance is

"highly deferential and doubly deferential when it is conducted through the lens of federal habeas."

Yarborough v. Gentry, 124 S. Ct. 1, 4 (Oct. 20, 2003).

Under the first prong of the Strickland test, the question is whether counsel's assistance was

reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct.

Strickland, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the

attorney's conduct "reflect[s] a failure to exercise the skill, judgment, or diligence of a reasonably

competent attorney."  United States v. Vincent, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S.

REPORT AND RECOMMENDATION- 9

838 (1985).

There is a strong presumption that counsel's performance fell within the wide range of reasonable assistance.  Strickland, 466 U.S. at 689.

Under Strickland's second prong, the petitioner must demonstrate prejudice, i.e., "that, but for counsel's unprofessional errors, the result would have been different."  Strickland, 466 U.S. at 694. To prove prejudice, petitioner must establish a "*reasonable probability* that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (emphasis in the original) (citing Strickland, 466 U.S. at 694).  However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation: a proper prejudice inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable.  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372.

Petitioner claims Mr. Alton was ineffective when he (a) failed to obtain evidence other than the DNA from the rape kit; (b) prohibited a defense witness, Aaron Fox, from testifying about the driver of the car, (c) failed to interview the driver and the court failed to accept the affidavit of the driver as newly discovered evidence, and (d) failed to impeach and cross-examine Ms. Donovan about her prior inconsistent statements.

There was no doubt in this case that the victim, Ms. Donovan had been beaten and raped. She remained in the hospital for two days.  (Dkt. 19, Exh. 4 at 3).  Ms. Donovan claimed that Petitioner beat and raped her.  Petitioner's best friend, Aaron Fox, told police that Petitioner was outraged because he thought that "everybody was f...... his bitch".  (Id., Exh. 18, Vol. 4 at 285). Petitioner's mother, told the police that she saw her son "hitting, beating" Ms. Donovan," and that

REPORT AND RECOMMENDATION- 10

she heard Petitioner and Ms. Donovan arguing.  (<u>Id.</u>, Exh. 19, Vol. 5 at 336).  The police officer

placed this in his report.  (<u>Id.</u> at 336).  Petitioner's counsel's trial strategy was that Petitioner did not

beat or rape Ms. Donovan, but that someone else did.   The court must strongly presume that

counsel made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 466 U.S. at 688.  A strategic decision to pursue a particular defense theory and forgo

other theories, is presumed reasonable and virtually unchallengeable.  <u>Id</u>. at 690-91; <u>Bell v. Cone</u>,

122 S. Ct. 1843, 1853-54 (2002); <u>Anderson v. Calderon</u>, 232 F.3d 1053, 1087-90 (9th Cir. 2000),

*cert. denied*, 122 S. Ct. 580 (2001).  Each of Petitioner's claims was previously reviewed and

rejected in the state courts.

## C.    **Trial Counsel's Failure to Obtain "Rape Kit" Evidence Was Objectively Reasonable**

In his direct appeal, Petitioner argued that a DNA expert should have been retained to testify

on his behalf.  The Washington Court of Appeals dealt with the Petitioner's argument as follows:

> Corbray argues that a DNA expert should have been retained to testify on his behalf.
> He asserts, somewhat confusingly, that the expert would have then opined that all of
> the evidence collected during Donovan's rape exam be ignored because no DNA was
> found.  The evidence shows that the State's DNA expert did not find Corbray's DNA
> in Donovan's vagina.[12]  But there was evidence that Corbray and Donovan had
> consensual sex earlier in the day, and Corbray's DNA could have been found
> elsewhere on Donovan's body.  Thus, defense counsel's decision not to call a forensic
> expert was a legitimate trial tactic.
>
> [12 Chris Sewell, the State's forensic DNA specialist, processed Donovan's vaginal fluid and was able
> to determine semen was present; he did not find sperm.  He testified that lack of sperm in semen
> does not correlate to when sex occurred since sperm can live in a female for many days.  Semen
> itself does not have DNA; sperm is the major source of DNA in a semen sample.  Thus, Sewell could
> not confirm which male the semen was from.] [footnote in text].

(Dkt. 19, Exh. 4, p. 8).

Petitioner subsequently filed a motion for relief from judgment, which was transferred to the

Court of Appeals for treatment as a personal restraint petition.  The Acting Chief Judge dismissed

REPORT AND RECOMMENDATION- 11

the petition and declined to consider several claims of ineffective assistance of counsel, including one that Petitioner's counsel failed to retain a forensic expert on his behalf, on the ground that similar claims had been raised and rejected on direct appeal.  (Id., Exh. 8 at 5-6).  The Supreme Court of Washington denied discretionary review of that ruling.  (Id., Exh. 10).

As noted by the Washington Court of Appeals and as a review of the record confirms, defense counsel's decision not to call a forensic expert was a legitimate trial tactic.  Mr. Sewell, the forensic scientist working for the Washington State Patrol lab, testified he examined vaginal samples and clothes in Petitioner's case.  (Dkt. 19, Exh. 17, Vol. 3 at 122).  Although semen was found, the semen did not contain sperm.  (Id. at 124).  As only sperm contains DNA, Mr. Sewell could not determine who the donor was.  (Id. at 125).  During cross-examination, trial counsel emphasized that it was impossible to determine the identity of the donor based on Mr. Sewell's findings.  (Id. at 127).  Both Ms. Donovan and Petitioner testified that they might have had intercourse on the morning of the day the beating and rape occurred.  (Id., Exh. 18, Vol. 4 at 223, Exh. 16, Vol. 2 at 56).

The State argues that not inquiring further into the DNA testing fit perfectly into trial counsel's overall trial strategy that it was someone else who raped Ms. Donovan.  The State points to the testimony of Petitioner and Mr. Williams, who testified that they located Ms. Donovan in the car with two unknown black males.  According to Mr. Williams, Ms. Donovan's pants were unbuttoned and according to Petitioner, Ms. Donovan had injuries to her face.   Mr. Alton raised the issue that Mr. Sewell failed to test pubic hair combings and fingernail scrapings.  (Id., Vol. 3 at 126).   In addition, the State argues that there was damning testimony from the victim, Mr. Fox and Mrs. Ford in their statements to the police, where they identified Petitioner as the assailant and rapist.  Therefore, the State argues, the reasonable strategy for trial counsel was to stop at DNA

REPORT AND RECOMMENDATION- 12

testing and to show the jury that the results were inconclusive, hopefully planting doubt in the jury's mind that it was Petitioner's semen that was found.

Trial counsel's decision to not call a forensic expert was a legitimate trial tactic.   Given the strong evidence linking Petitioner to the crime, insistence on testing fingernail scrapings and pubic hair combings might very well have produced irrefutable DNA evidence that it was Petitioner who assaulted and raped Ms. Donovan.    Thus, it is reasonable to conclude that trial counsel's decision not to pursue further testing as part of a trial tactic cannot be said to have been so deficient that it "fell below an objective standard of reasonableness," that prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.   Accordingly, the Washington Courts adjudication of this claim on the merits cannot be said to be contrary to or an unreasonable application of clearly established federal law.

**D.**      **Failure of Trial Counsel to Allow Defense Witness to Testify As to Real Driver of Vehicle and Failure to Submit Affidavit of Driver**

Petitioner claims that Mr. Alton was ineffective because, although Mr. Fox told trial counsel that Mr. McLeod was the driver of the car, trial counsel prohibited Mr. Fox from testifying to that fact at trial.  Petitioner also claims that he was then prejudiced by the trial court's refusal to accept the affidavit of Michael McLeod as newly discovered evidence.   Both of these claims were adjudicated on the merits before the Washington Court of Appeals.  In his direct appeal, Petitioner was already making the argument that his trial counsel "knew the identity of the driver of the car," but the Court of Appeals found no support in the record for Petitioner's claim that his counsel should have subpoenaed the person who could have testified that someone else harmed Ms. Donovan:

> Pro se, Corbray contends that he received ineffective assistance of counsel because his attorney did not retain a forensic expert or interview and subpoena

REPORT AND RECOMMENDATION- 13

potential witnesses.

The Washington State and United States constitutions guarantee a criminal defendant the right to effective assistance of counsel. Wash. Const. art. I, § 22; U.S. Const. amend. VI. The test for ineffective assistance of counsel has two parts. One, it must be shown that the defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness. Two, it must be shown that such conduct prejudiced the defendant, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed. *State v. Thomas*, 109 Wn.2d 222,225-26, 743 P.2d 816 (1987) (adopting test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In reviewing this type of challenge, we presume that the assistance was effective. *State v. Sardinia*, 42 Wn. App. 533, 539, 713 P.2d 122, review denied, 105 Wn.2d 1013 (1986). Generally, we will not consider those matters we regard as tactical decisions or matters of trial strategy. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel." *State v. Mak*, 105 Wn.2d 692, 731, 718 P.2d 407, cert. denied, 479 U.S. 995 (1986); *State v. Adams*, 91 Wn.2d 86, 90, 586P.2d 1168 (1978); see *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d `1251 (1995) ("Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.")

. . . .

Corbray also asserts that his counsel should have subpoenaed the person who, according to Corbray, could have testified that someone else harmed Donovan.[1] But there is nothing in the record to support this claim and Corbray's argument fails. *McFarland*, 127 Wn.2d at 335.

[1 Corbray relies on the two cases which both held that an attorney's performance amounted to ineffective assistance because the attorneys did not investigate potential alibi witnesses: *Nealy v. Cabana*, 764 F.2d 1173 (5th Cir. 1985) and *United States v. Gray*, 878 F.2d 702 (3d Cir. 1989). This argument fails because there was never an issue of Corbray needing an alibi. Corbray is arguing someone else harmed Donovan; he is not arguing that he was never with Donovan [footnote in text].

(Dkt.19, Exh. 3 at 10, Exh. 4 at 7-9).

In his later, collateral proceedings, Petitioner requested a new trial based on newly

discovered evidenced, asserting that he did not learn of Michael McLeod's identity until he received

McLeod's affidavit in November 2002, when he was in the middle of his direct appeal.  The Court of

REPORT AND RECOMMENDATION- 14

Appeals held as follows:

Corbray now submits, as newly discovered evidence, affidavits from Aaron Fox and the driver of the car that brought Donovan to the Golden Bear Bar. Michael, the driver, explains that he and someone named Tim gave Donovan a ride from the 72nd Street Pub to Aaron's house because she was too drunk to drive. When they discovered that Aaron was not home, they drove around trying to find him and ended up at the Golden Bear Bar. When they got there, Corbray came over and helped Donovan into Williams's car.

Michael adds that he saw Aaron Fox "around mid-January of 2002" and learned of Corbray's legal situation. He then told Aaron that he left the bar with Donovan on the night of January 6, 2001, along with Tim. He told Aaron that he would so testify, but Aaron replied that Corbray's trial was over. Michael's affidavit is dated October 30, 2002.

Aaron's affidavit reports that he met with Corbray's trial attorney on January 8, 2002, and told him that he had information about the people who left the 72nd Street Pub with Donovan on the night of January 6, 2001. Aaron told defense counsel that Donovan left with Michael McCloud[2] and a person named Tim, and he also reported that Michael was willing to testify on Corbray's behalf. He asserts that Corbray's attorney told him not to mention the information concerning Michael when he testified. Aaron's affidavit is dated October 12, 2004.

Corbray argues that these affidavits constitute newly discovered evidence that supports his version of the events and contradicts Donovan's account. He maintains that he received Michael's affidavit in November 2002 and submitted it to his attorney. When his attorney failed to act, Corbray filed this petition.[3]

To obtain a new trial based on newly discovered evidence, a defendant must satisfy several criteria. He must prove that the evidence (1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching. *State v. Macon*, 128 Wn.2d 784, 800 (1996).

Corbray asserts that he did not learn of Michael's identify until he received Michael's affidavit in November 2002, when he was in the middle of his direct appeal, and that he could not submit the affidavit to this court because it constituted evidence outside the record that this court could not consider. In the pro se supplemental brief that Corbray filed on December 16, 2002, however, he made the following claim in arguing that he received ineffective assistance of counsel:

> Defense counsel knew that the identity of the driver of the car that Donovan left with from the 72nd Bar and Grill on the night of January 6th, 2001, would be crucial and pivotal evidence to the

REPORT AND RECOMMENDATION- 15

defense. During trial Corbray made known to Defense counsel that the individual who Donovan left with had been located and that he was willing to come to court and testify that it was him that Donovan left with from the 72nd Bar and Grill and that it was him who gave her a ride to the Golden Bear establishment, where Mr. Corbray and Mr. Williams would later find Donovan getting out of a car. . . . Even though this Eye-witness, the owner and driver of the vehicle who Donovan left with from the 72nd Bar and Grill wanted to testify the Defense counsel told Corbray that it was too late in the trial to present him as a Witness.

Pro Se Supplemental Brief, at 10-11.

This argument undermines Corbray's assertion that he did not know of Michael's identity until his case was on appeal. Although he does not identify Michael by name, his brief reveals that he located Michael and discussed his proposed testimony with his attorney. Consequently, Michael's affidavit does not constitute newly discovered evidence because its content was known during trial. Aaron's affidavit shares the same shortcoming, as it reveals that Aaron and defense counsel discussed the possibility of Michael testifying, with counsel apparently deciding against it.

Moreover, to the extent that both affidavits support Corbray's and Williams's testimony concerning the events that occurred on January 6, 2001, they are cumulative. They are impeaching as well, since they discredit Donovan's testimony that she left the 72nd Street Pub with Aaron. The affidavits do not meet the criteria of newly discovered evidence.

As stated, Corbray also asserts that he received ineffective assistance of counsel. He argues that his attorney was ineffective because (1) he told Aaron not to testify about Michael; (2) he failed to interview Michael and to submit Michael's affidavit as newly discovered evidence supporting a new trial; (2) he failed to cross examine Donovan about her inconsistent statements to an emergency room doctor and a police officer; and (3) he failed to conduct DNA tests of the rape kit evidence that would have established Corbray's innocence.

As stated, Corbray raised a claim of ineffective assistance on direct appeal, arguing that his attorney did not retain a forensic expert or interview and subpoena potential witnesses. A petition will not be considered if it presents grounds that have been previously heard and determined. An issue will be barred on this ground if

"(1) [T]he same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent

REPORT AND RECOMMENDATION- 16

application."

*In re Haverty*, 101 Wn.2d 498, 503 (1984) (*citing Sanders v. United States*, 373 U.S. 1, 15 (1963)). This standard applies to issues previously raised on direct appeal as well as issues previously raised in a personal restraint petition. *In re Jeffries*, 114 Wn.2d 485, 487-88 (1990).

The "same ground" is presented if the same legal basis for granting relief is raised. *In re Taylor*, 105 Wn.2d 683, 688 (1986). The substantial revision of a previously rejected legal argument does not create a new claim or constitute good cause to reconsider the original claim. *Jeffries*, 114 Wn.2d at 488.

The Fifth Circuit rejected an ineffective assistance claim made on appeal where the same claim based on different allegations of wrongdoing was raised and rejected in an earlier habeas proceeding. *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir. 1976). "[A]ppellant cannot raise the same ground here by simply varying the factors that he claims demonstrate incompetency." *Cunningham*, 536 F.2d at 83. Similarly, the Washington Supreme Court rejected an ineffective assistance claim made in a personal restraint proceeding where the court already had considered and rejected on direct appeal numerous challenges relating to the petitioner's trial court representation. *In re Lord*, 123 Wn.2d 296, 313, clarified, 123 Wn.2d 737, *cert. denied*, 513 U.S. 849 (1994).

The only new allegations of incompetency that Corbray could not have raised on direct appeal and that arguably meet the "ends of justice" standard are those concerning the two affidavits. As shown above, the substance of both affidavits was known and discussed during Corbray's trial. Consequently, they do not constitute newly discovered evidence that warranted a new trial. Aaron's testimony concerning what Michael told him would have been inadmissible hearsay, and counsel's decision not to have Michael testify was tactical. See ER 801; *State v. Mannering*, 150 Wn.2d 277, 285-86 (2003) (decision not to call witness was strategic and did not support ineffective assistance claim). None of Corbray's arguments regarding the two affidavits supports a claim of ineffective assistance of counsel. *See State v. Thomas*, 109 Wn.2d 222, 225-26 (1987) (to show ineffective assistance, defendant must demonstrate that counsel's performance was both deficient and prejudicial).   This court declines to consider Corbray's additional allegations of ineffective assistance.

[2The correct spelling of Michael's last name is something of a mystery. The affidavit spells it as both "McLoud" and McCloud." Michael states in his affidavit that he had outstanding driving warrants at the time of the events in question. After the State responded that it could find no such person with outstanding warrants on January 6, but that Michael McLeod did have outstanding warrants later in January, Corbray replied that Michael's last name was "McLeod" and that he was the man the State identified in its response [footnote in the text].

[3The trial court transferred his CrR 7.8 motion for relief to this court for treatment as a personal restraint petition. See CrR 7.8(c)(2) [footnote in the text].

REPORT AND RECOMMENDATION- 17

(Dkt. #19, Exh. 8 at 3-7).

The Supreme Court denied review, affirming, *inter alia*, that the identity of the witness who was not called to testify was known to Petitioner at time of trial and that had he testified as stated in his affidavit, his testimony would have been merely cumulative and impeaching and therefore, not newly discoverable. [1]

The State argues that Petitioner's claim does not make sense.  Why would his trial counsel, whose entire trial strategy was based on the theory that someone other than Petitioner raped and assaulted Ms. Donovan, inexplicably prohibit Mr. Fox from testifying as to the true identity of the driver of the car from where Ms. Donovan emerged at the club?  The State argues that this also does not make sense when it is viewed from the standpoint of when the claim first emerged.  Even though the identity of the driver would be critical to Petitioner's case (if the driver had some information of another man attacking Ms. Donovan), the issue was not raised on direct appeal.  (Dkt. 19, Exh. 2).  Although, Petitioner makes reference in his pro se brief of defense counsel knowing the "identity of the driver of the car Donovan left with . . . would be critical . . . , " the affidavits appear for the first time with Petitioner's personal restraint petition, filed more than two years after he was sentenced. (Id., Exh. 7).

Mr. Alton declares that prior to trial, Petitioner and other defense witnesses, including Mr. Fox, told him they did not know the identity of the driver of the car Petitioner claimed he found Ms. Donovan in, and that it was only after trial that Mr. Fox gave him the statement of Mr. McLeod.

---

[1]Where, as in this case, the state courts have considered the substance of the McLeod affidavit, its admissibility, and the credibility of Petitioner's claim that he did not know the identity of the driver at the time of trial, an evidentiary hearing before the district court would serve no purpose except to possibly contradict the state court findings. *See* Paragraph IV above.

REPORT AND RECOMMENDATION- 18

(Dkt. # 21, Exh. 2 at 1, ¶¶ 2, 7).  Because he believed any testimony from the driver would be harmful to the case unless the driver or a passenger would testify that he beat up Ms. Donovan and because he believed that was extremely unlikely to happen, Mr. Alton did not investigate the driver's identity.  (Id. at ¶ 3).  Mr. Alton also states that he felt the testimony of the driver would only enhance Ms. Donovan's testimony because it would only tighten the time frame in which Ms. Donovan received her injuries to the time she was with the Petitioner.  (Id. at ¶ 4).  Mr. Alton concludes that Mr. Fox could not have testified about the identity of the driver because his testimony at trial was that he left the bar before Petitioner located Ms. Donovan and removed her from the car and that once he left the bar he spent the rest of the night at home in bed sound asleep.  (Id. at ¶ 5).  Thus, his testimony about his alleged knowledge of the identity of the driver would be inadmissible hearsay as he would have to rely on others' accounts as to who the driver was.[2]  Finally, and perhaps most telling, is Mr. Alton's assessment of the contents of Mr. McLeod's affidavit and the reason why he did not file it:

> 7.    After the trial was over, Mr. Fox gave me a statement of a Mr. McLeod.  The statement said he was the driver of the car, he gave Donovan a ride, and dropped her off at the Golden Bear Bar.  McLeod's statement did not mention McLeod's beating up Donovan, witnessing her beaten up, or observing any indication that she had been beaten up.
>
> 8.    I did not file any motions based on this statement because McLeod's statement would have reduced the time frame in which Donovan's injuries were inflicted to the time she was with Mr. Corbray.

(Id. at ¶¶ 7-8).

    As noted by the State, Mr. Alton assembled a cast of witnesses in Petitioner's defense to testify that Petitioner never assaulted or raped Ms. Donovan in an attempt to overcome the damaging

---

[2]This assessment of the admissibility of Mr. Fox's proposed testimony was the same conclusion reached by the Washington Court of Appeals, *See* Dkt. #19, Exh. 8 at 7.

REPORT AND RECOMMENDATION- 19

1    statements given to the police by Aaron Fox and Marcia Ford.   (*See* Dkt. # 19, Exh. 18, Vol. 4,

2    Testimony of Spencer Miller, Krista Fox, Aaron Fox, Pat Williams, Dennis Corbray).   Petitioner's

3    mother, Marcia Ford, who was at the house, testified she did not see anything. (<u>Id</u>., Exh. 19, Vol. 5

4    at 327-335).   Tamara Corbray, Petitioner's sister and also a State's witness, testified she did not

5    observe any assault or rape of Ms. Donovan by Petitioner. (<u>Id</u>., Exh. 17, Vol. 3 at 90-111).   The

6    state courts found that the proposed affidavits would have been cumulative of the evidence already

7    presented; specifically, the testimony of Petitioner and Mr. Williams.

8

9         State court findings of fact are presumed correct unless the petitioner rebuts the presumption

10   by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).   Under 28 U.S.C. § 2254(d)'s

11   "unreasonable application" clause, "a federal habeas court may not issue the writ simply because the

12   court concludes in its independent judgment that the state-court decision applied <u>Strickland</u>

13   incorrectly." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002) (per curiam) (*citing* <u>Bell v. Cone</u>, 535

14   U.S. 685 (2002)).   "Where . . . the states court's application of governing federal law is challenged,

15   it must be shown to be not only erroneous, but objectively unreasonable."

16

17        Counsel's decision to not call Mr. McLeod as a witness was a strategic one and does not give

18   rise to a finding of ineffective assistance of counsel.  The duty to investigate and prepare a defense is

19   not limitless and does not necessarily require that every conceivable witness be interviewed. <u>United</u>

20   <u>States v. Tucker</u>, 716 F.2d 576, 584 (9th Cir. 1983).   Additionally, the decision to call a witness falls

21   well within the wide latitude counsel must have in making tactical decisions. <u>Strickland</u>, 466 U.S. at

22   689.

23

24        Petitioner's claims relating to the driver of the car have been adjudicated and have been found

25   not credible and without merit.  Even if we assume that Mr. McLeod drove Ms. Donovan to the

26   Golden Bear as he claims to have done, the state courts' adjudication of the issue is not objectively

27

28   REPORT AND RECOMMENDATION- 20

unreasonable.   The Washington courts analyzed the affidavit and petitioner's claimed knowledge at the time of trial and found, upon Petitioner's own admission, that he knew the driver's identity at the time of trial.   Therefore, the evidence could not be considered "newly discovered." (Dkt. #19, Ex. 8, p. 4-5, *quoting* Petitioner's pro se brief).   The Court of Appeals also found that proposed testimony of Mr. Fox and Mr. McLeod would be cumulative to the testimony of Petitioner and Mr. Williams at trial.   (Id. at 5).   This finding was not unreasonable as there is nothing in Mr. McLeod's affidavit that would shed any light on who assaulted Ms. Donovan.   Indeed, as noted by Petitioner's trial counsel, the affidavit could have been more damaging to Petitioner's case as it narrows the time frame in which Ms. Donovan was assaulted to the time she was with Petitioner as Mr. McLeod does not state that he or anyone else assaulted or raped her.

To show ineffective assistance, Petitioner must demonstrate that counsel's performance was both deficient and prejudicial.   The record reflects that counsel's decision not to call McLeod did not fall below an objective standard of reasonableness.   Even assuming that Mr. Alton erred in this regard, the court is not persuaded that, but for such error, the result would have been different," Strickland, 466 U.S. at 694, in light of the cumulative nature of the testimony.

**E.    Cross-Examination of Ms. Donovan Was Objectively Reasonable**

Petitioner next argues that Mr. Alton was ineffective in not aggressively cross-examining Ms. Donovan on the stand.   He points to several instances in her testimony, including statements she made to Dr. Porter and to the police, where he believes she was inconsistent in her statements, and argues that these inconsistencies should have been highlighted by his counsel during his cross-examination of Ms. Donovan during trial.   The State counters that Mr. Alton's cross-examination was an objectively reasonable tactic because, as a young woman who had been severely beaten and

REPORT AND RECOMMENDATION- 21

raped and who was obviously very nervous on the stand, Ms. Donovan probably aroused sympathy among the jury.  The State argues that to have aggressively cross-examined her, would have more likely been counterproductive to the Petitioner and the strategy chosen by Mr. Alton, to concentrate on Ms. Donovan's inconsistencies during his closing, was the more reasonable approach.  The State notes that, in closing, Mr. Alton touched on those inconsistencies, such as Ms. Donovan's evasiveness as to the amount of alcohol she had consumed (Dkt. # 19, Exh. 19, Vol. 5 at 354-355); that at the hospital, Ms. Donovan said Mr. Corbray attacked her in the parking lot (Id. at 356, 359); that the extent of her injuries and results of CT scan and x-rays were inconsistent with the weight of Mr. Corbray had he actually stomped on her head and hit Ms. Donovan for an hour as she claimed (Id. at 356-357, 368-69); that Krista Fox never heard any yelling or screaming, contrary to Donovan's testimony that Mr. Corbray dragged her out of the car and started beating her (Id. at 361); and, that Tamara Corbray and her boyfriend Spencer Miller would have heard yelling and screaming if the rape and beating occurred inside their house.  (Id. at 364).

Petitioner first claimed he received ineffective assistance of counsel on direct appeal, for having failed to retain a forensic expert or interview and subpoena potential witnesses.  (Id., Ex. 3). In his personal restraint petition, he raised this issue of his counsel's failure to cross-examine Ms. Donovan about her inconsistent statements to an emergency room doctor and a police officer.  The Court of Appeals refused to consider the ground, however, as having been previously heard and determined on direct appeal.  (Dkt. # 19, Exh. 8 at 6).

Even if this court were to agree with Petitioner that his counsel's performance in cross-examining Ms. Donovan fell outside the wide range of reasonable assistance, Strickland, 466 U.S. at 689, it must still be persuaded that, but for counsel's unprofessional errors, the result would have been different." Strickland, 466 U.S. at 694.  Given the sensitive nature of the injuries suffered by

REPORT AND RECOMMENDATION- 22

Ms. Donovan, the court agrees that it was not unreasonable for trial counsel to choose to

concentrate on the inconsistencies in her testimony during his closing rather than during his cross-

examination.

**F.      Denial of Opportunity to Cross-Examine Dr. Porter Was Not Violation of
         Confrontation Clause**

        Petitioner also claims that his constitutional Sixth and Fourteenth Amendment rights to

confront witnesses against him when he was denied the opportunity to cross-examine Dr. Porter.

        Dr. Bell was one of the physicians who saw Ms. Donovan at the hospital.  (Dkt. 19, Exh. 17,

Vol. 3 at 76).  Dr. Bell testified that Dr. Porter was the treating physician of Ms. Donovan in the ER.

(Id. at 77).  At the time of the trial, Dr. Porter was unavailable because he had been deployed to

Afghanistan.  Dr. Bell testified as to the story related by Ms. Donovan at the hospital and the extent

of her injuries.  (Id. at 79-82).

        The Washington Court of Appeals adjudicated this issue on the merits, finding no violation of

Petitioner's Sixth Amendment confrontation rights:

>        Corbray raises a separate claim concerning his inability to cross examine Dr.
> Clifford Porter, the doctor who interviewed and examined Donovan in the emergency
> room. Because Dr. Porter was in Afghanistan at the time of trial, another emergency
> room physician, who also examined Donovan, testified regarding Porter's medical
> report and his record of Donovan's statements. Corbray argues that his evidence was
> improperly admitted in violation of his confrontation clause rights.
>
>        The confrontation clause of the United States Constitution precludes the
> admission of hearsay testimony offered against a criminal defendant unless that
> statement falls within a "firmly rooted" exception to the hearsay rule. State v. Woods,
> 143 Wn.2sd 561, 595 (2001). The medical treatment and business record exceptions
> to the hearsay rule are firmly rooted, and Donovan's statements to Dr. Porter and his
> record of her injuries were admissible to Dr. Porter and his record of her injuries were
> admissible under those exceptions. See In re Grasso, 151 Wn.2d 1, 19 (2004); State
> v. Monson, 113 Wn.2d 833, 847 (1989); State v. Alexander, 64 Wn. App. 147, 156-

REPORT AND RECOMMENDATION- 23

1    57 (1992).

2            Corbray does not argue that the records include testimonial hearsay that
3    would require the opportunity to cross examine the declarant. *See* <u>Crawford v.
     Washington</u>, 541 U.S. 36 (2004) (confrontation clause bars testimonial hearsay unless
4    declarant is unavailable and defendant had prior opportunity for cross examination).
     In any event, Donovan testified during trial and was available for cross examination
5    about her statement to Dr. Porter. Corbray was afforded his full rights under the
6    confrontation clause.

7
     (Dkt. # 19, Exh. 8 at 7-8).
8
9            The Washington Supreme Court also adjudicated the claim, also finding no violation of the

10   Confrontation Clause:

11           Finally, Mr. Corbray contends that his right of confrontation was violated
12   when a physician testified to the records of the physician who had examined the
     victim. These records included both the examining physician's medical report and
13   statements the victim made to him. (The examining physician was unavailable.) But
     the Acting Chief Judge correctly observed that the records were admissible, without
14   violating the confrontation clause, under the medical treatment and business records
     hearsay exceptions. See <u>In re Grasso</u>, 151 Wn.2d 1, 19, 84 P.3d 859 (2004); <u>State v.
15   Alexander</u>, 64 Wn. App. 147, 156-57, 822 P.2d 1250 (1992). Mr. Corbray relies on
     <u>Crawford v. Washington</u>, 541 U.S.  36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
16   But Crawford applies only to testimonial hearsay statements. Mr. Corbray does not
     show that the medical records included any testimonial statements by the examining
17   physician. And to the extent the records included statements by the victim made in
     response to questioning, the victim testified at trial and thus was subject to cross-
18   examination.

19
20   (Dkt. #19, Exh. 10 at 2).

21           Criminal defendants in state court trials have a Sixth Amendment right to confront the

22   witnesses against them.  <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965).  The right ensures reliability by

23   requiring the witness to make statements under oath, requires the witness submit to cross-

24   examination, and allows the jury to assess the witness' credibility. <u>California v. Green</u>, 399 U.S. 149,

25   158 (1970); <u>Lee v. Illinois</u>, 476 U.S. 530, 540 (1986).  In <u>Crawford v. Washington</u>, 124 S.Ct. 1354,

26
27   1369 (2004) the Supreme Court held that testimonial statements of witnesses, "absent from trial have

28   REPORT AND RECOMMENDATION- 24

been admitted only where the declarant is unavailable and only where the defendant has had a prior

opportunity to cross-examine." Crawford is retroactive.  Bockting v. Bayer, 399 F.3d 1010, 1012

(9th Cir. 2005), *cert. granted*, 126 S.Ct. 2017 (2006).    In Davis v. Washington, 2006 WL 1667285

(U.S. Wash), the Supreme Court described non-testimonial statements as those made in the course of

police interrogation under circumstances objectively indicating that the primary purpose of the

interrogation is to enable police assistance to meet an ongoing emergency.

The State argues that Ms. Donovan's statements to Dr. Porter in the emergency room were

non-testimonial and therefore, Crawford does not apply.  Dr. Bell was one of the physicians who saw

Ms. Donovan at the hospital.  (Dkt. 19, Exh. 17, Vol. 3 at 76).  Dr. Bell testified that Dr. Porter was

the treating physician of Ms. Donovan in the ER.  (Id. at 77).  At the time of trial, Dr. Porter was

unavailable because he had been deployed to Afghanistan.  Dr. Bell testified to the story related by

Ms. Donovan at the hospital and to the extent of her injuries.  (Id. at 79-82).

The testimony indicates that Ms. Donovan was in the emergency room seeking emergency

medical help and that the primary purpose for Ms. Donovan's relating the story of her injuries to Dr.

Porter and Dr. Porter's compilation of his report was to enable Ms. Donovan to receive medical

assistance.  In the emergency room, presumably, Ms. Donovan was not acting as a witness and she

was not testifying.  As in Davis, then, Dr. Porter's report was non-testimonial and his absence at trial

did not violate Petitioner's confrontation rights.  As noted by the Washington courts previously

adjudicating the issue, to the extent statements were made by Ms. Donovan, she was present at trial

and subject to cross-examination.  For these reasons, the court finds that the Washington State

courts' adjudication on the merits of this issue was not contrary to, nor an unreasonable application

of, clearly established federal law.  Dows v. Wood, 211 F.3d 480 (9th Cir. 2000).

REPORT AND RECOMMENDATION- 25

## VI.  CONCLUSION

Based on the foregoing discussion, the Court should **DENY the petition**.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 6, 2006** as noted in the caption.

DATED this   7th   day of August, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 26